UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>JULIANN O'DONNELL<br><br>Debtor | Chapter 7<br>Case No. 12-10038-FJB |
| ASSOCIATED RECEIVABLES<br>FUNDING, INC.,<br>Plaintiff<br><br>v.<br><br>JULIANN O'DONNELL,<br>Defendant | Adversary Proceeding<br>No. 12-01146 |

**PLAINTIFF'S MEMORANDUM ON**
**EMPLOYMENT AGREEMENT**

NOW COMES the Plaintiff, Associated Receivables Funding, Inc., ("ARF"), by counsel, and pursuant to the Court's Order of March 12, 2014, submits the following Memorandum supporting the admissibility of Exhibit 14 and Exhibit 40 as proffered by the Plaintiff in the adversary proceeding through the testimony of Plaintiff's witness, Scott Campbell ("Campbell").[1]

**Factual Summary**

1. On or about March 4, 2010, an invoice was issued from Grove Electronics, LLC ("Grove") to Flextronics America LLC ("Flextronics"), in the amount $102,690.00 and being noted as invoice 4971 (the "Flextronics Invoice"). (Trial Exhibit 3)

---

[1] Stated in another way, the exhibits referenced were admitted into evidence subject to a motion to strike by the defendant. This memorandum addresses that issue.

2. The Flextronics Invoice was transmitted to ARF on March 4, 2010. It was forwarded to ARF for the purposes of having ARF rely upon the information contained therein and to fund the Flextronics Invoice.

3. ARF provided funds to Grove in reliance upon the Flextronics Invoice reflecting the shipment of goods by Grove to Flextronics.

4. The Defendant knew or should have known that items per the Flextronics Invoice were not shipped. In part, this knowledge is evidenced by Exhibits 14 and 40 showing shipping information that was forwarded to the Defendant showing that no such shipment was made to Flextronics. Notwithstanding this, the Defendant still followed through on seeking funds from ARF for this fictitious invoice.

5. On or about January 21, 2008, Grove Electronics, LLC ("Grove") and Campbell executed a document entitled "Non-Solicitation and Non-Disclosure Agreement" (the "Agreement"). See Exhibit "1", attached hereto.

6. At the evidentiary hearing in this matter, Campbell testified in relevant part, as follows:

- Campbell, in his position with Grove as Manager-Engineering and Quality Assurance, had access to a spreadsheet entitled, "Daily Sales Order Schedules" that were sent to him, and others, through daily company emails in the format of Microsoft Excel spreadsheets.

- This Daily Sales Order Schedule was produced on a daily basis as a compilation of sales orders that were issued and fulfilled or scheduled to be fulfilled in Grove's ordinary course of business. (Exhibits 14 and 40).

- Exhibit 14, and Exhibit 40, were true and accurate copies of the Daily Sales Order Schedules for February 26, 2010, and March 5, 2010, respectively.

- It was Grove's standard practice to forward these emails to both Campbell's work email and to his personal "Gmail" account so that he could reference emails when not at work or otherwise working off-site. This was done by Grove's "IT" person, and not by Campbell.

- At the end of the day on March 4, 2010, Campbell, the Defendant, and others, received a (Grove) company email to which there was an attached Daily Sales Order Schedule for March 5, 2010. (Exhibit 40).

- The Daily Sales Order Schedule did not indicate that goods as invoiced in the Flextronics Invoice were ever shipped. (Exhibit 40)

- Based on the Defendant's her receipt of that email, she knew or had to know that items per the Flextronics Invoice were not shipped.

7. Grove laid off Campbell on or about May or June 2010.

8. Grove never requested that Campbell turn over to Grove anything that could be deemed or considered "Confidential Information" or otherwise deemed property of Grove.

9. Grove ceased conducting business no later than September 12, 2010.

10. Grove filed a voluntary Chapter 7 bankruptcy petition on December 30, 2010.

11. The Defendant objected to the admissibility of Exhibits 14 and 40 citing the language in the Agreement that she alleged prohibited such disclosure

by Campbell. She also moved to strike these exhibits after their admission into evidence.

12. The Court took no action on the Defendant's objection pending further briefing as to the applicability of the Agreement to the adversary proceeding, and specifically to the testimony provided by Campbell as to Exhibits 14 and 40.

## Argument

In Massachusetts, in order to enforce an employment agreement, the employer must establish that it has protectable and legitimate business interests. Then, the employer's reasonable need to protect its business interests must be weighed against the reasonableness of the restraints imposed by the restriction as well as any public interests that may be at stake. *Richmond Bros., Inc. v. Westinghouse Broadcasting Co.*, 357 Mass. 106, 110, 256 N.E.2d 304 (1970).

In most, if not the vast majority of cases within Massachusetts dealing with employment agreements, the context of the enforceability of the agreement in question involves a prior employer requesting injunctive relief against a former employee. In that context, restrictive employee covenants are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer." *Marine Contractors v. Hurley*, 365 Mass. 280, 287, 310 N.E.2d 915 (1974). Legitimate business interests might include trade secrets, confidential information, or the good will the employee has acquired through dealings with his customers. *Id.* See also *All Stainless, Inc. v. Colby*, 364 Mass. 773, 779–780, 308 N.E.2d 481 (1974).

Here, the Defendant asserts standing on Grove's behalf to claim that Campbell violated the Agreement to the detriment of Grove's legitimate business interests in the form of the introduction of Daily Sales Order Schedules. The purpose of the objection is not to protect the legitimate business interests of Grove, but to preclude testimony and documentary evidence of wrongdoing on the part of the Defendant.

The recitations contained within the Agreement drafted by Grove contain Grove's position as to certain "desires" to protect confidentiality of data that it states involved "considerable time, effort, and money" in developing in order to maintain the "goodwill of its business and customers". The recitations further state that the designated employee, in this case, Campbell, recognizes Grove's need to protect confidentiality and the need to "protect the goodwill of its business and of existing and new customers". In this instance, however, Grove allowed its information technology employee to provide Campbell personal use of emails and the data contained therein.

This Defendant, Juliann O'Donnell, has no standing to raise any objection on Grove's behalf based upon the Agreement as the Defendant was not Campbell's employer, Grove was. Grove filed Chapter 7 in December 2010, and whatever shares the Defendant owned in Grove at that time are no longer hers, but are property of the bankruptcy estate. Simply stated, for the last three plus years, Grove had no protectable and legitimate business interests in this matter at stake.

ARF conducted a Rule 2004 Examination of the Defendant, Debtor Juliann O'Donnell. The Defendant was instructed to produce documents for the purposes of the Rule 2004 Examination that, if produced, should have included documents

5

such as the Daily Sales Order Schedules. No such documents were ever produced by the Defendant.

Campbell, a witness and not a party to this proceeding, produced these documents in response to a subpoena. ARF should not be penalized for the Defendant's failure to produce documents that should have been in her possession, custody and control. The fact that the responsive documents were produced by a witness should not prejudice ARF.

## Conclusion

For the reasons set forth herein, in that the Defendant has no standing to assert that Grove has any legitimate business interest to protect in this matter, and in fact, there is no legitimate business interest to protect, the Court should admit Exhibits 14 and 40, and give all due credit to the testimony of the witness Campbell as to these Exhibits.

Respectfully submitted,

Associated Receivables
Funding, Inc.
By its attorney,

Dated: April 4, 2014

/s/ Michael B. Feinman
Michael B. Feinman
BBO#545935
Feinman Law Offices
69 Park Street
Andover, MA  01810
Tel:  978-475-0080
Email: mbf@feinmanlaw.com

## CERTIFICATE OF SERVICE

    I, Michael B. Feinman, hereby certify that I have this day served the foregoing pleading, by mailing a true and accurate copy of each, if not shown as being served electronically, via first class mail and postage prepaid, to the following parties in interest:

Julian O'Donnell
1 Whitcomb Way
North Reading, MA 01864

Dated: April 4, 2014                                /s/ Michael B. Feinman
                                                                Michael B. Feinman

# EXHIBIT "1"

EXHIBIT #4

## GROVE ELECTRONICS, LLC
### dba Chip Partners

## NON-SOLICITATION
## AND
## NON-DISCLOSURE AGREEMENT

*WHEREAS*, Grove Electronics, LLC, its successors or assigns (together the "Company") has compiled and maintains confidential and proprietary data with respect to its business and its customers, and will continue to do so; and,

*WHEREAS*, Company has spent considerable time, effort, and money in developing such data and accruing and maintaining the goodwill of its business and customers; and,

*WHEREAS*, Company desires to protect the confidentiality of such present and future data and goodwill of its business and customers; and,

*WHEREAS*, Company has agreed to hire me in the position of <u>Manager-Engineering and Quality Assuance</u> to maintain and enhance the goodwill of Company, and secure additional business from existing customers of Company and to cultivate new customers and business for Company; and,

*WHEREAS*, I desire to be hired by Company and recognize, understand, and agree with Company's need to protect the confidentiality of all such data as described above, and recognize, understand, and agree with Company's need to protect the goodwill of its business and of existing and new customers;

*NOW THEREFORE*, in consideration of my employment with Company and the compensation now and hereafter paid to me by Company, I hereby agree to the following:

**1. Confidential Information**

   *(a)   Company Information.* I agree at all times during the term of my employment and thereafter to hold in strictest confidence, and not to use, except for the benefit of Company, or to disclose to any person, firm, corporation or other entity, except for the benefit of Company, any Confidential Information of Company. I understand that "Confidential Information" means any Company business information, business opportunities, proprietary information, technical data, trade secrets or know-how, and whether or not patentable or protectable by copyright, including, but not limited to, data, plans for present and future research and development, marketing information, business plan(s), methods, service techniques or plans, engineering data, software, trade secrets, designs, and samples, product plans, products, services, customer lists, customers and key business contacts (including, but not limited to, customers and key business contacts of

Company with whom I became acquainted during the term of my employment), suppliers, markets, software developments, inventions, processes, formulas, technology, designs, drawings, engineering information, hardware configuration information, marketing information, costs, prices and pricing information, finances or other business information disclosed to me by Company, either directly or indirectly in written, graphic, photographic, recorded, prototype, sample or in any other form or by drawings or inspection of parts or equipment, and which relates in any way to the business of Company. For purposes of this Agreement, I understand that Company's business shall be defined by (a) the products it researches and develops for the purpose of commercial sales thereof, including products and services then for sale; (b) all products and services then under development for commercial sale; (c) all products and services in connection with research which is then being done in order to determine whether such product or service is appropriate for commercial sale; and (d) all products and services with respect to which Company's intent to engage in research, development or sale has been discussed and memorialized in writing. I further understand that Confidential Information shall not include either information, in whatever form, which does not relate to Company's business or information, in whatever form, which has become publicly known or made generally available through no wrongful act of mine. I further agree that all Confidential Information shall at all times remain the property of Company.

*(b)    Former Employer Information.* I agree that I will not, during my employment with Company and thereafter, improperly use or disclose any proprietary information or trade secrets of any former employer or other person or entity with which I have an agreement or duty to keep in confidence, information acquired by me in confidence, if any, and that I will not bring onto the premises of Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

*(c)    Third-Party Information.* I recognize that Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree during my employment with the Company and thereafter to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm, or corporation or to use it except as necessary in carrying out my work for Company consistent with Company's agreement with such third party.

**2.    Conflicting Employment**

I agree that, during the term of my employment with Company, I will not engage in any other employment, occupation, consulting or other business activity related to the business in which Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to Company.

3.  **Solicitation of Employees**

During the Restricted Period, as defined below, I will not either directly or indirectly, solicit or take away, or attempt to solicit or take away or hire or cause to be hired, employees of Company, either for my own business or for any other person or entity.

4.  **Covenants Against Competition**

    **NA**

5.  **Returning Company Property**

I agree that, at any time upon request of Company, and in any event at the time of leaving the employ of Company, I will deliver to Company (and will not keep in my possession or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any of the aforementioned items, containing Confidential Information or otherwise belonging to Company, its successors or assigns, whether prepared by me or supplied to me by Company.

6.  **Inventions**

    *(a)   Assignment of Inventions.* I agree that I will promptly make full written disclosure to Company and will hold in trust for the sole right and benefit of Company, and I hereby assign to Company, or its designee, all my right, title and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, of whatever nature and whether or not patentable or registerable under copyright or similar laws, which I may solely or jointly with others conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of Company and/or any successor to Company or parent or subsidiary of Company and in the regular scope of such employment (collectively referred to as "Inventions").

    *(b)   Securing Company's Rights to Inventions.* I agree to assist Company, or its designee, at Company's expense, in every proper way to secure Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and all other instruments which Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.

## 7. Binding Effect; Assignment

*(a)* *Company.* I agree that this Agreement may be assigned by Company and shall inure to the benefit of any successor to Company, and any such successor shall be deemed substituted for Company under the provisions of this Agreement.

*(b)* *Me.* I agree that all provisions of this Agreement are binding upon me, my heirs, executors, and administrators. I further agree that my obligations hereunder are non-delegable, non-assignable and non-transferable.

## 8. Governing Law

I agree that this Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts, which laws shall prevail in the event of any conflict of laws.

## 9. Jurisdiction

I agree that Company may institute any action against me in any state or federal court of general jurisdiction in the Commonwealth of Massachusetts, and I irrevocably submit to the jurisdiction of such court and hereby waive any objection I may have to the jurisdiction or venue of such court.

## 10. Integration; Modification

I acknowledge and agree that this Agreement supersedes any and all prior oral and written agreements between Company and me regarding the matters stated herein, that we have incorporated in this Agreement our entire understanding with regard to the matters stated herein, and that no oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect. I further agree that the provisions of this Agreement may not be changed or modified except by an agreement in writing executed by both Company and me.

## 11. Voluntary and Knowing Agreement

I acknowledge and agree that:

*(a)* I am entering into this Agreement freely and voluntarily;

*(b)* that I have ascertained and weighed and given due consideration to all the facts and circumstances likely to influence my judgment;

*(c)* that I have sought and obtained independent legal advice or have had the opportunity to obtain legal advice but have chosen not to do so, and

*(d)* that I clearly understand and assent to all the provisions hereof.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on the _____ day of \_\_\_\_Jan 21,_____, 20 08

Signature: *Scott Campbell*

Scott Campbell
\_\_\_\_1. Dean Rd\_\_\_\_
Address

\_\_\_\_Reading, MA. 01867\_\_\_\_

\_\_\_\_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\_\_\_\_
S. S. #

\* **Exceptions to Section 6 - Inventions**

Inventions developed outside of the Company and not related to the business of the Company are excluded from and not covered by this agreement.

Acknowledgement of exception to Section 6

Signature: *[signature]*   Date: 1/21/08

Signed by Company Representative